**Louise Agnes BARKANIC, Individually and as Personal Representative of the Estate of Peter Patrick Barkanic, Deceased,**

**Gladys Patricia Fox, Individually and as Personal Representative of the Estate of Donald Branford Fox, Deceased, Appellants,**

v.

**GENERAL ADMINISTRATION OF CIVIL AVIATION OF the PEOPLES REPUBLIC OF CHINA, a/k/a Civil Aviation Administration of the Peoples Republic of China or CAAC, Appellee.**

No. 881, Docket 86–7985.

United States Court of Appeals, Second Circuit.

Argued March 3, 1987.

Decided June 29, 1987.

Daniel F. Hayes, Salibello, Hayes & Zahn, New York City, for appellants.

John K. Weir, Haight, Gardner, Poor & Havens, New York City (Louis R. Martinez, of counsel), for appellee.

Before OAKES and WINTER, Circuit Judges, and ZAMPANO, District Judge.*

OAKES, Circuit Judge:

This case involves a question of subject matter jurisdiction under the Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. § 1605(a)(2). Representatives of the estates of Peter Barkanic and Donald Fox,

---

* Of the District of Connecticut, sitting by designation.

who were killed in the crash of a China Airlines plane enroute from Nanjing to Beijing, China, on January 18, 1985, brought this wrongful death action against CAAC, an agent of the Peoples Republic of China providing domestic and international air services to passengers traveling in, to, and from China. The United States District Court for the Eastern District of New York, Charles P. Sifton, Judge, dismissed their claims on the ground that the court lacked subject matter jurisdiction under the FSIA. We reverse.

CAAC was authorized to operate in the United States by the Civil Aeronautics Board in 1980. The authorization allowed CAAC to engage in scheduled foreign air transportation of persons between the coterminal points of Beijing and Shanghai in the Peoples Republic of China; the intermediate point Tokyo (or another point in Japan); and the coterminal points Honolulu, Los Angeles, San Francisco, and New York, with an optional technical stop at Anchorage. Attached to the CAB permit was a waiver of any defense of sovereign immunity from suit "based upon any claim arising out of operations by the holder under this permit." As originally granted, however, the CAB permit to CAAC did not cover the entirely domestic flight between the terminal points Beijing and Nanjing in China.

Since being issued the CAB permit CAAC has continued regularly scheduled flight operations into and out of San Francisco, Los Angeles, and New York, carrying passengers and freight for hire and making its schedules available to the traveling public. It maintains its own employees and offices at two locations in New York which are listed in public telephone directories. In addition, on November 18, 1980, CAAC entered into a bilateral interline traffic agreement with Pan American World Airways and a general sales agency agreement whereby Pan American was to act as general sales agent for CAAC in the United States and CAAC was to act as general sales agent for Pan American in the Peoples Republic of China. Under this agency agreement, Pan American has the authority both to select and to appoint ticket agents in the United States and to receive revenues for flights on CAAC.

Peter Barkanic and Donald Fox were American businessmen whose tickets for the China Airlines flight from Nanjing to Beijing were purchased from Vanslycke & Reeside Travel, Inc., Washington, D.C., an agent for Pan American World Airways, on January 9, 1985. It is undisputed that tickets issued for domestic flights in China in this manner must be confirmed by CAAC in China and, indeed, Barkanic and Fox did not travel on Flight 1508 departing 10:25 a.m. on January 18, 1985, as originally designated on the United States issued tickets. Instead, stickers attached to the original tickets indicate that the tickets were changed by the CAAC issuing office in Nanjing, China, to the ill-fated Flight 5109 departing at 5:05 p.m. on the same day. There is no evidence in the record that at the time this change in flights was made Barkanic and Fox were required to purchase new tickets or pay any additional fee. Flight 5109 crashed while attempting to land in poor weather at Jinan, China, killing Barkanic, Fox, and many others.

The district court dismissed this wrongful death action for lack of subject matter jurisdiction under the first clause of section 1605(a)(2) of the FSIA, 28 U.S.C. § 1605(a)(2).[1] The court found that there was no significant nexus between CAAC's commercial activities in the United States and the accident in China because the tickets issued in the United States were unconfirmed, were indeed changed as to flight number and departure time in China, and were for travel entirely within China. The district court also held that CAAC did not waive its defense of sovereign immunity by

---

**1.** Section 1605 reads in pertinent part as follows:

(a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case—

. . . .

(2) in which the action is based upon a commercial activity carried on in the United States by the foreign state ...

28 U.S.C. § 1605.

accepting the CAB foreign air carrier permit.

We have previously held, as the district court recognized, that "[w]hen a foreign state has carried on a commercial activity within the United States, the first clause of § 1605(a)(2) ... withdraws immunity with respect to claims based not only on acts within the United States but also with respect to acts outside the United States if they comprise an integral part of the state's 'regular course of commercial conduct' ... 'having substantial contact with the United States.'" *Ministry of Supply, Cairo v. Universe Tankships, Inc.,* 708 F.2d 80, 84 (2d Cir.1983) (quoting 28 U.S.C. § 1603(d) & (e)). Though the Fifth Circuit has suggested that an argument can be made that *Ministry of Supply, Cairo* approved a "doing business" interpretation of clause one of section 1605(a)(2), it nevertheless felt that "this reading is too broad since the parties did not raise the 'doing business' issue." *Vencedora Oceanica Navigacion, S.A. v. Compagnie Nationale Algerienne de Navigation,* 730 F.2d 195, 201 n. 12 (5th Cir.1984). We agree with the Fifth Circuit's reading of *Ministry of Supply, Cairo* and take it, as did the district court, that a nexus is required between the commercial activity in the United States and the cause of action. *See Vencedora Oceanica Navigacion,* 730 F.2d at 202; *Gilson v. Republic of Ireland,* 682 F.2d 1022, 1027 n. 22 (D.C.Cir.1982); *Velidor v. L/P/G Benghazi,* 653 F.2d 812, 820 (3d Cir.1981), *cert. dismissed,* 455 U.S. 929, 102 S.Ct. 1297, 71 L.Ed.2d 474 (1982).

Here the sales agency contract between CAAC and Pan American expressly permitted Pan American to perform the following functions on behalf of CAAC: "Handling of reservations for passenger ... transportation and handling of all clerical work in connection therewith" (¶ 2.1.1), and "[i]ssuance and completion of passenger ticket and baggage checks, excess baggage tickets, airway bills and other traffic documents for passenger ... transportation over the services of [CAAC]" (¶ 2.1.2). The agreement expressly says that "[t]he abovementioned traffic documents issued by the General Sales Agent shall be honored and accepted by the Principal" (¶ 2.1.-2), even though it was understood by Pan American that "no traffic documents valid for transportation on a particular flight will be issued unless advance reservation shall have been confirmed for the transportation and the payment of the relevant charges payable therefore [*sic*] shall have been received." (*Id.*) Here the tickets that were issued in Washington covered a specific flight, on a specific date, at a specific time. This is true even though the tickets as issued bore the legend "RQY," which in airline ticketing practice signifies that economy seating has been requested and that the entire transaction has not been finalized and must be confirmed.

In our view, by accepting in the United States payment for transportation between Nanjing and Beijing and by issuing tickets which, even though stickered in China, were accepted for the passage of the decedents on the illfated flight, CAAC entered into a contract of carriage with the decedents. Payment of the fares was consideration for a commercial service to be performed by a commercial agency in China. Indeed, CAAC honored the contract it had entered into through the agency of Pan American and the Washington, D.C., travel agent by accepting the U.S.-issued tickets for the passage of the decedents on the date in question and, moreover, it was CAAC policy to accept or confirm such tickets. The reservation status of the tickets in our opinion simply makes no difference. Had, for example, the Chinese airline declined to carry Barkanic and Fox at all, they certainly would have had an action for breach of contract. It follows that there is a sufficient nexus between the airplane crash and the commercial activity carried on by CAAC in this country.

The two cases most relied upon as analogous by the district court, *In re Disaster at Riyadh Airport,* 16 Av.Cas. 17,880 (D.D.C.1981), and *Harris v. VAO Intourist, Moscow,* 481 F.Supp. 1056 (E.D.N.Y. 1979), and a third case not cited by the district court, *Tigchon v. Island of Jamaica,* 591 F.Supp. 765 (W.D.Mich.1984), are all readily distinguishable. In *Riyadh,* which involved the death of passengers

**14**

during a fire in a Saudi Arabian Airlines aircraft on a scheduled domestic flight between Riyadh and Jeddah, Saudi Arabia, the plaintiffs were able to show only that the airline "did business" in the United States, without establishing any particular tie between its U.S.-based activities and the air disaster in Saudi Arabia. And in *Harris* and *Tigchon*, both involving hotels operated by their respective governments at which the plaintiffs-decedents were fatally injured, the hotels did not even do business in the United States. As the court said in *Harris*, "The commercial activity out of which plaintiff's claim arises is the operation of the Hotel in Moscow; despite the apparent integration of the Soviet tourist industry, the relationship between the negligent operation of the National Hotel and any activity in the United States is so attenuated that [§ 1605(a)(2)] is not applicable.... This civil court action is not based upon commercial activity in the United States." 481 F.Supp. at 1061. The *Tigchon* case was similar, with even less connection to commercial activity in the United States in that the Jamaican government expressly denied that the tour operator that arranged plaintiffs' vacation was its agent or authorized representative.

The present case is closer to *Ministry of Supply, Cairo, supra,* where immunity was denied to the Egyptian government because it had arranged in the United States for a shipment of wheat from a United States port, although the grain was later rendered unusable in the course of offloading in Egypt, or to *Arango v. Guzman Travel Advisors Corp.,* 621 F.2d 1371, 1379–80 (5th Cir.1980), where the court denied immunity to Dominica Airlines for claims relating to events on a tour package it had directly sponsored for sale in the United States. We repeat that the fact that Barkanic and Fox were not guaranteed passage on a particular domestic flight in China is irrelevant since the tickets involved here were bought and paid for in the United States and available and used for passage on the fatal flight.

Judgment reversed.