Louise Agnes BARKANIC, Individually and as Personal Representative of the Estate of Peter Patrick Barkanic, Deceased; Gladys Patricia Fox, Individually and as Personal Representative of the Estate of Donald Branford Fox, Deceased, Plaintiffs–Appellants,

v.

GENERAL ADMINISTRATION OF CIVIL AVIATION OF THE PEOPLE'S REPUBLIC OF CHINA, also known as Civil Aviation Administration of the People's Republic of China, or CAAC, Defendant–Appellee.

No. 562, Docket 90–7641.

United States Court of Appeals, Second Circuit.

Argued Nov. 26, 1990.

Decided Jan. 14, 1991.

**958**

Daniel F. Hayes, Mineola, N.Y., for plaintiffs-appellants.

John K. Weir, New York City (Louis R. Martinez, Patrick E. Bradley, Haight, Gardner, Poor & Havens, of counsel), for defendant-appellee.

Before OAKES, Chief Judge, CARDAMONE and McLAUGHLIN, Circuit Judges.

OAKES, Chief Judge:

Representatives of the estates of Peter Barkanic and Donald Fox appeal from a judgment of the United States District Court for the Eastern District of New York, Arthur D. Spatt, *Judge,* entered on the basis of a memorandum and order of Charles P. Sifton, *Judge,* that limited the liability of defendant General Administration of Civil Aviation of the ·People's Republic of China ("CAAC") to the $20,000 maximum allowed under Chinese law. Because we conclude that the Foreign Sovereign Immunities Act ("FSIA"), Pub.L. 94–583, 90 Stat. 2891 (codified as amended in scattered sections of 28 U.S.C.), requires us to apply the choice of law rules of the forum state, and that, under New York's choice of law analysis, Chinese law is controlling, we affirm.

## FACTS

The facts of this case are set out more fully in our prior opinion, *Barkanic v. General Administration of Civil Aviation,* 822 F.2d 11 (2d Cir.), *cert. denied,* 484 U.S. 964, 108 S.Ct. 453, 98 L.Ed.2d 393 (1987), with which familiarity is assumed.

On January 18, 1985, Peter Barkanic and Donald Fox, citizens of the District of Columbia and New Hampshire, respectively, were killed in the crash of a Chinese plane en route from Nanjing to Beijing, China. Representatives of their estates brought this wrongful death action against CAAC, an agency of the Chinese government that provides domestic and international air services to passengers traveling to or from airports within China.

On October 17, 1986, the district court dismissed the case for lack of subject matter jurisdiction under the FSIA. We reversed that decision, based on our finding that a significant nexus existed between CAAC's commercial activities in the United States and the accident that occurred in China. *See* 822 F.2d at 13–14; *see also* 28 U.S.C. § 1605(a)(2) (1988) ("A foreign state shall not be immune from the jurisdiction of courts of the United States ... in any case ... in which the action is based upon a commercial activity carried on in the United States by the foreign state....").

On remand, CAAC moved for partial summary judgment limiting its liability to $20,000. It based this motion on Chinese law, which limits an airline's liability for the wrongful death of a non-citizen to $20,-000.[1] The district court granted CAAC's motion, on the theory that the FSIA directs courts to apply the choice of law rules of the place where the "act or omission" occurred, and that, under the facts of this case, Chinese choice of law rules required the application of Chinese law.

On appeal, appellants challenge the district court's conclusion that the FSIA directs courts to apply the choice of law rules of the place of the act or omission. Citing the language and history of the FSIA, appellants claim that Congress intended fed-

---

**1.** Appellants do not dispute CAAC's interpreta-    tion of Chinese law.

eral district courts to apply the choice of law rules of the states in which they sit—in this case, the choice of law rules of New York. Had the district court correctly applied New York's choice of law rules to the facts of this case, appellants maintain, it would have concluded that the laws of decedents' domiciles, rather than Chinese law, govern the issue of damages.

## DISCUSSION.

As an initial matter, we agree with appellants that the district court's interpretation of the FSIA was erroneous. In our view, rather than directing courts to apply the choice of law rules of the place of the act or omission, the FSIA implicitly requires courts to apply the choice of law provisions of the forum state with respect to all issues governed by state substantive law. However, because we believe that, under the facts of this case, New York's choice of law rules would lead to the application of·Chinese law, we affirm the entry of partial summary judgment in CAAC's favor.

### 1. Choice of Law Under the FSIA.

■ The district court's interpretation of the FSIA was based on an analogy between the FSIA and the Federal Tort Claims Act ("FTCA"), ch. 646, 62 Stat. 983 (codified as amended in scattered sections of 28 U.S.C.). The court first observed that, under *Richards v. United States*, 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962), FTCA cases are governed by the choice of law rules of the place where the act or omission occurred. It then concluded that, because the FSIA uses the same language as the FTCA, the *Richards* rule should apply to FSIA cases as well. We disagree.

It is true that the FSIA and the FTCA contain similar language. Specifically, the FTCA states:

> If ... the law of the place where the act or omission complained of occurred provides ... for damages only punitive in nature, the United States shall be liable for actual or compensatory damages ... in lieu thereof.

28 U.S.C. § 2674 (1988). The FSIA, in almost identical language, provides:

> If ... the law of the place where the action or omission occurred provides ... for damages only punitive in nature, the foreign state shall be liable for actual or compensatory damages.

28 U.S.C. § 1606 (1988). By its terms, however, the language of these provisions relates only to the issue of punitive damages, not to the general question of choice of law. With respect to choice of law, the FTCA contains additional language providing that the United States shall be liable "in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b) (1988). It was this general choice of law provision, and not the provision on punitive damages, that was the basis for the Supreme Court's determination that the FTCA requires courts to apply the law of the place of the act or omission. *See Richards*, 369 U.S. at 9, 82 S.Ct. at 591. Because such a provision is absent in the FSIA, the district court's conclusion that *Richards* should govern FSIA cases was mistaken. *Accord Harris v. Polskie Linie Lotnicze*, 820 F.2d 1000, 1003 (9th Cir.1987) (rejecting the FSIA–FTCA analogy).

Because the FSIA does not contain an express choice of law provision, we must infer from the statutory language a choice of law analysis that best effectuates Congress' overall intent. Of particular significance in this regard is language providing that "the foreign state shall be liable in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 1606 (1988). Based on this language, the Supreme Court has held that, as a general matter, state substantive law is controlling in FSIA cases. *See First National City Bank v. Banco Para El Comercio Exterior De Cuba*, 462 U.S. 611, 622 n. 11, 103 S.Ct. 2591, 2598 n. 11, 77 L.Ed.2d 46 (1983) ("[W]here state law provides a rule of liability governing private individuals, the FSIA requires the application of that rule to foreign states in like circumstances.").[2] The goal of apply-

2. The precise issue before the *Banco Para El* ___ *Comercio* Court was whether a Cuban bank was

ing identical substantive laws to foreign states and private individuals, however, cannot be achieved unless a federal court utilizes the same choice of law analysis in FSIA cases as it would apply if all the parties to the action were private. Here, the district court would have applied New York's choice of law rules to this wrongful death action if the parties before it were all private individuals. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941) (holding that federal courts sitting in diversity must apply the choice of law rules of the forum state). To ensure identity of liability between CAAC and a private defendant, then, the court should have applied New York's choice of law rules even though CAAC is an instrumentality of a foreign state. *See* 1 Moore's Fed.Prac. (Pt. 1), ¶ 0.66[5], at 700,183–700.184 (2d ed. 1990) (concluding that the forum state's choice of law rules should govern FSIA cases); Chow, *Rethinking the Act of State Doctrine: An Analysis in Terms of Jurisdiction to Prescribe*, 62 Wash.L.Rev. 397, 432 & n. 236 (1987) (same).

Our conclusion that forum law provides the proper choice of law rules for FSIA cases is supported by the statute's legislative history. As we noted in *Verlinden B.V. v. Central Bank of Nigeria*, 647 F.2d 320 (2d Cir.1981), *rev'd on other grounds*, 461 U.S. 480, 103 S.Ct. 1962, 76 L.Ed.2d 81 (1983), when Congress created the FSIA, it did not intend to alter the substantive law of liability or "to create new federal causes of action," but sought only "to provide 'access to the courts in order to resolve ordinary legal disputes.'" *Id.* at 326 (quoting legislative history) (emphasis omitted). Based on that goal, we suggested in dicta that "'state substantive law, *including choice of law rules*, will be applied if the issue before the court is non-federal.'" *Id.* at 326 n. 19 (quoting legislative history) (emphasis added). Any other conclusion would permit courts to apply different substantive laws than those that would control if jurisdiction over the foreign state were based on diversity of citizenship—as it was before the FSIA was enacted—and would therefore alter the substantive law of liability in violation of congressional intent.[3]

■ CAAC suggests that application of the forum state's choice of law rules is inappropriate in FSIA cases because jurisdiction is based on the existence of a federal question, rather than on diversity of citizenship. This argument, we believe, misconstrues the scope of a federal court's power to choose between state and federal law. To be sure, federal courts are *required* to apply state choice of law rules only when the issues before it are governed by state substantive law under *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). *See Klaxon, supra.*

---

an alter-ego of the Cuban government, a question related to "the attribution of liability among entities of a foreign state." 462 U.S. at 622 n. 11, 103 S.Ct. at 2598 n. 11 (emphasis omitted). Concluding that, like the act of state doctrine, this question bore on "the amenability of a foreign sovereign to suit in United States courts," *id.*, the Court determined that a uniform body of federal law should control. However, the language of the opinion indicates that the application of federal law was an exception to the general rule of applying state substantive law to FSIA claims, and was based on the special nature of questions involving the amenability of a foreign sovereign to suit in the United States. *See id.* Here, there is no question that CAAC is "amenable to suit" under the FSIA; the only question is the extent of CAAC's liability. As such, state law, rather than federal law, is controlling.

**3.** CAAC points to additional language in the legislative history that reflects an intent to pro-

mote "uniformity of decision" in FSIA cases, *see, e.g.*, H.R.Rep. No. 94–1487, 94th Cong., 2d Sess. 13, *reprinted in* 1976 U.S.Code Cong. & Ad.News 6604, 6611 (indicating that federal courts were vested with broad jurisdiction under the FSIA in part to promote uniformity of decision in cases involving foreign sovereigns), and argues that this language militates against applying the choice of law rules of the various states. However, the statute itself expressly embraces the goal of holding foreign states liable "in the same manner and to the same extent as a private individual under like circumstances," 28 U.S.C. § 1606, and, as discussed above, other portions of the legislative history underscore the importance of that goal to the FSIA's drafters. Under these circumstances, we do not believe that Congress intended to achieve "uniformity of decision" by applying different choice of law standards to foreign defendants and private parties.

Where jurisdiction is based on the existence of a federal question, moreover, we have not hesitated to apply a. federal common law choice of law analysis. *See, e.g., Corporacion Venezolana de Fomento v. Vintero Sales Corp.,* 629 F.2d 786, 795 (2d Cir.1980), *cert. denied,* 449 U.S. 1080, 101 S.Ct. 863, 66 L.Ed.2d 804 (1981). However, the fact that we are not compelled to apply state choice of law principles in this federal question case does not preclude us from relying on state law if we believe that doing so would best effectuate Congress' overall intent. *See United States v. Kimbell Foods, Inc.,* 440 U.S. 715, 728, 99 S.Ct. 1448, 1458, 59 L.Ed.2d 711 (1979) (noting that state law may be incorporated as the federal rule of decision in federal question cases). Because we believe that applying the forum state's choice of law analysis will help ensure that foreign states are liable "in the same manner and to the same extent as a private individual under like circumstances," 28 U.S.C. § 1606, we conclude that incorporation of state choice of law rules is appropriate here.

■ CAAC also argues that applying the choice of law rules of the forum state would conflict with the United States' obligations under international treaties. First, it points to a bilateral air treaty executed between the United States and the People's Republic of China, in which the parties agree to comply with the laws and regulations of the country in which an airline is located. *See* Agreement Between the Government of the United States and Government of the People's Republic of China Relating to Civil Air Transport, Sept. 17, 1980, United States–People's Republic of China, T.I.A.S. No. 10326, art. 5. This provision, however, indicates only that a United States airline must respect Chinese laws when operating within Chinese territory; it does not establish the governing law for wrongful death actions brought in response to accidents occurring on Chinese soil.

CAAC also relies on the Convention on International Civil Aviation of December 7, 1944, 61 Stat. 1180, T.I.A.S. No. 1591 (the "Chicago Convention"), which provides that

"[t]he contracting States recognize that every State has complete and exclusive sovereignty over the airspace above its territory." *Id.,* art. 1. Application of the choice of law principles of the forum state, however, in no way implies disrespect for China's sovereignty, even if those principles sometimes call for the application of non-Chinese law. *See* Note, *Constructing the State Extraterritorially: Jurisdictional Discourse, the National Interest, and Transnational Norms,* 103 Harv.L.Rev. 1273, 1301 (1990) (rejecting the notion that the application of laws extraterritorially is "simply imperialism dressed in a transnational outfit," and arguing that "significant, transnational values" may warrant application of the law of one jurisdiction to events that transpired in another).

Because we conclude that the FSIA requires courts to apply the choice of law rules of the forum state, we turn now to New York's choice of law methodology.

### 2. New York's Choice of Law Analysis.

■ Appellants rely heavily on a line of cases beginning with *Kilberg v. Northeast Airlines, Inc.,* 9 N.Y.2d 34, 211 N.Y.S.2d 133, 172 N.E.2d 526 (1961), for the proposition that the law of the decedent's domicile governs the issue of damages in wrongful death cases. For the reasons set forth below, however, we conclude that *Kilberg* and its progeny are no longer good law, and that, under current law, New York courts would apply the law of the place of the accident under the facts presented here. Although we disagree with the district court's approach, then, we affirm its application of Chinese law.

In *Kilberg,* the representative of a New York domiciliary who had been killed in an airline accident in Massachusetts sued the airline for wrongful death in New York state court. Massachusetts, the place of the accident, set strict limits on damages in wrongful death cases. New York, the decedent's domicile and the forum state, had a strong public policy—indeed a constitutional prohibition—against such limitations. Characterizing the Massachusetts statute as "procedural," and noting New York's

policy against damage limitations, the court refused to apply the Massachusetts law. Although *Kilberg* was decided before New York adopted an "interest analysis" approach to choice of law questions in *Babcock v. Jackson*, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963), after *Babcock* New York courts continued to hold that the law of the decedent's domicile governs the issue of damages in wrongful death cases. *See, e.g., Miller v. Miller*, 22 N.Y.2d 12, 290 N.Y.S.2d 734, 237 N.E.2d 877 (1968); *Long v. Pan American World Airways*, 16 N.Y.2d 337, 266 N.Y.S.2d 513, 213 N.E.2d 796 (1965).

Chief Judge Fuld's landmark decision in *Neumeier v. Kuehner*, 31 N.Y.2d 121, 335 N.Y.S.2d 64, 286 N.E.2d 454 (1972), however, called into question the continued vitality of the *Kilberg* rule. *Neumeier*, which involved the applicability of Ontario's "guest statute"[4] to an automobile accident involving an Ontario passenger and a New York driver, set forth three general rules for choice of law analysis:

"1. When the guest-passenger and the host-driver are domiciled in the same state, and the car is there registered, the law of that state should control and determine the standard of care which the host owes to his guest.

2. When the driver's conduct occurred in the state of his domicile and that state does not cast him in liability for that conduct, he should not be held liable by reason of the fact that liability would be imposed upon him under the tort law of the state of the victim's domicile. Conversely, when the guest was injured in the state of his own domicile and its law permits recovery, the driver who has come into that state should not—in the absence of special circumstances—be permitted to interpose the law of his state as a defense.

3. In other situations, when the passenger and the driver are domiciled in different states, the rule is necessarily less categorical. Normally, the applicable rule of decision will be that of the state where the accident occurred but not if it can be shown that displacing that normally applicable rule will advance the relevant substantive law purposes without impairing the smooth working of the multi-state system or producing great uncertainty for litigants."

31 N.Y.2d at 128, 335 N.Y.S.2d at 70, 286 N.E.2d at 457–58 (quoting *Tooker v. Lopez*, 24 N.Y.2d 569, 585, 301 N.Y.S.2d 519, 532, 249 N.E.2d 394, 404 (1969) (Fuld, J., concurring)) (citations omitted). Essentially, the *Neumeier* rules directed courts to apply the law of the place of the accident unless the plaintiff and defendant were domiciliaries of the same state. If extended beyond the guest statute context to the issue of damage limitations in wrongful death cases, then, these rules would require application of locus law where, under the *Kilberg* line of cases, the law of the decedent's domicile would otherwise have applied.

The question whether the *Neumeier* rules apply to damage limitations in wrongful death actions is crucial to the choice of law problem we confront today. If *Neumeier* does apply, under the second rule, China's damage limitation is controlling: CAAC's conduct occurred within its domicile, and the law of that domicile serves to limit CAAC's liability.[5] If *Neumeier* is limited to the question of foreign guest statutes, however, under *Kilberg*, the laws of the decedents' domiciles—here, New Hampshire and the District of Columbia— would govern and would preclude enforcement of the Chinese law.

In the years directly following *Neumeier*, the New York Court of Appeals was silent on the scope of the *Neumeier* rules.

---

**4.** So-called "guest statutes" were passed in the 1920s and 1930s to eliminate the liability of motor vehicle drivers to their passengers except in cases of gross or willful negligence. They were much criticized, however, and several states declined, on the basis of public policy, to apply the guest statute of the place where the accident occurred. *See, e.g., Mellk v. Sarahson*,

49 N.J. 226, 229 A.2d 625 (1967); *Clark v. Clark*, 107 N.H. 351, 222 A.2d 205 (1966).

**5.** We note that, unlike the third rule, the relevant portions of the second rule are phrased in non-discretionary terms, which unambiguously call for application of locus law.

When faced with that issue in *Rosenthal v. Warren*, 475 F.2d 438 (2d Cir.), *cert. denied*, 414 U.S. 856, 94 S.Ct. 159, 38 L.Ed.2d 106 (1973), however, we concluded that New York courts would not apply the law of the place of the accident under *Neumeier* to reduce the recovery in a wrongful death action, at least where the decedent had been a domiciliary of New York. Finding that "[i]n no way ... did the [*Neumeier*] court retreat from the position it had staked out in *Kilberg* and *Miller*, refusing to apply other states' wrongful death limitations in the case of the death of a *New York* domiciliary," *id.* at 442 (emphasis in original), we refused to apply a Massachusetts damage limitation even though the second *Neumeier* rule would have led to the application of Massachusetts law. Central to our decision in *Rosenthal* was the "strong New York public policy against damage limitations." *Id.* at 443.

The New York Court of Appeals' recent decision in *Schultz v. Boy Scouts of America, Inc.*, 65 N.Y.2d 189, 491 N.Y.S.2d 90, 480 N.E.2d 679 (1985), however, suggests to us that *Rosenthal* is no longer an accurate interpretation of New York law.[6] In *Schultz*, the court applied the first and third *Neumeier* rules to dismiss a wrongful death suit pursuant to a New Jersey statute rendering charitable entities immune from suit. *See* 65 N.Y.2d at 200–03, 491 N.Y.S.2d at 96–98, 480 N.E.2d at 685–87. In reaching its conclusion, the court noted that "rules ... limiting damages in wrongful death actions, vicarious liability rules, [and] immunities from suit," should all be governed under the same choice of law analysis. *See* 65 N.Y.2d at 198, 491 N.Y.S.2d at 96, 480 N.E.2d at 685. As such, it appears to us that New York courts would now apply the *Neumeier* rules to *all* post-accident loss distribution rules, including rules that limit damages in wrongful death cases. *Accord Feldman* ¬*v. Acapulco Princess Hotel*, 137 Misc.2d 878, 886–87, 520 N.Y.S.2d 477, 483 (Sup.Ct.1987) ("The *Schultz* opinion clearly reaffirmed the validity and applicability of the *Neumeier*

rules and expanded their coverage to all post-event tort loss-distribution questions."); Note, *New York's Choice of Law Quagmire Revisited*, 51 Brooklyn L.Rev. 579, 615 (1985) ("[T]he [*Schultz*] court ... effectively dispelled any doubts that it might confine [the *Neumeier*] rules to the guest-statute realm."). Accordingly, based on the second *Neumeier* rule, we affirm the district court's application of Chinese law.

We are aware that some of the lower state and federal courts have continued to apply the law of the plaintiff's domicile to the issue of damages despite the New York Court of Appeals' holding in *Schultz*. For example, in *Scharfman v. National Jewish Hospital*, 122 A.D.2d 939, 506 N.Y.S.2d 90 (2d Dep't 1986), the court applied the law of the plaintiff's domicile in a situation covered by the second rule in *Neumeier* because the defendant had engaged in substantial business activities in the plaintiff's state. *See also Huang v. Lee*, 734 F.Supp. 71 (E.D.N.Y.1990) (holding, in a situation covered by *Neumeier*'s second rule, that the decedent's domicile has the greatest interest in regulating damages); *cf. Morgan Guaranty Trust Co. v. Garrett Corp.*, 625 F.Supp. 752, 761 (S.D.N.Y.1986) (applying locus law, but noting that "[w]e are not dealing with an archaic or anachronistic law that would drastically limit or eliminate a damage award"). For the reasons set forth above, however, we believe the only factors the New York Court of Appeals now considers relevant with respect to loss distribution issues are those factors incorporated in the three *Neumeier* rules. To the extent other courts have found to the contrary, therefore, we respectfully disagree.

■■■ Appellants attempt to avoid the implications of *Schultz* on the ground that damage limitations in wrongful death actions are somehow different from other loss distribution rules, and that New York courts will refuse to apply such limitations if they are "unjust or anachronistic." Es-

---

**6.** Appellants' reliance on *O'Rourke v. Eastern Air Lines, Inc.*, 730 F.2d 842 (2d Cir.1984), which implied in dicta that *Kilberg* and *Rosenthal* were

still good law, *see id.* at 850, is misplaced, as that case was decided before the New York Court of Appeals' decision in *Schultz.*

sentially, appellants are asking us to invoke the same public policy against damage limitations that we found dispositive in *Rosenthal. See* 475 F.2d at 443. Under *Schultz*, however, a party seeking to invoke a public policy exception to the application of foreign law "must establish that there are enough important contacts between the parties, the occurrence and the New York forum to implicate [New York's] public policy and thus preclude enforcement of the foreign law." 65 N.Y.2d at 202, 491 N.Y.S.2d at 99, 480 N.E.2d at 688. Here, appellants cannot establish such contacts. Aside from the fact that New York is the forum state, there is *no* connection between the parties and the occurrence, on the one hand, and the state of New York, on the other. Under these circumstances, appellants' reliance on New York's policy against damage limitations is unavailing.[7]

*3. Federal Policy Against Damage Limitations.*

Lastly, appellants argue that applying China's limitation on damages would contravene important policies of the federal government. In support of this claim, they rely on a number of cases that have criticized the damage limitations of the Warsaw Convention. *See, e.g., In Re Korean Air Lines Disaster of September 1, 1983,* 664 F.Supp. 1463, 1470–71 (D.D.C.1985), *aff'd,* 829 F.2d 1171 (D.C.Cir.1987), *aff'd sub nom. Chan v. Korean Air Lines, Ltd.,* 490 U.S. 122, 109 S.Ct. 1676, 104 L.Ed.2d 113 (1989). While certain courts may have criticized the limitations of the Warsaw Convention, however, the fact remains that the Convention is a treaty to which the United States is bound, and the federal courts regularly enforce its damage limitations. *See, e.g., Stratis v. Eastern Air Lines, Inc.,* 682 F.2d 406 (2d Cir.1982). As such, appellants' contention is without merit.[8]

Accordingly, the judgment of the district court is affirmed.

---

7. We note that appellants do not rely on the public policies of either New Hampshire or the District of Columbia, and we do not believe that New York courts would consider the public policies of jurisdictions other than New York in choice of law decisions. In any event, it is clear that, at least in New Hampshire, there is no public policy against damage limitations in wrongful death cases, as the New Hampshire legislature has itself limited the damages recoverable in certain types of wrongful death actions. *See* N.H.Rev.Stat.Ann. § 556:13 (1989).

8. Appellants also claim that the $20,000 limit under Chinese law is really a compulsory insurance scheme, rather than a limitation on damages, and that the collateral source rule precludes consideration of this insurance policy in awarding damages for liability in tort. This argument is without merit. The collateral source rule prohibits courts from considering benefits received from *third parties* in determining the extent of the plaintiff's recovery. *See Salcer v. Envicon Equities Corp.,* 744 F.2d 935, 941 (2d Cir.1984), *vacated on other grounds,* 478 U.S. 1015, 106 S.Ct. 3324, 92 L.Ed.2d 731 (1986). Where, as here, the benefits are received from the defendant, the collateral source rule does not apply. *See Restatement (Second) of Torts* § 920A (1979).