Tei Yan SUN; Yeh Hwa Sun, Individually and as Personal Representatives of Peter Sun, deceased; Philipe Sun, Plaintiffs–Appellants,

v.

TAIWAN; Taipei Economic and Cultural Representative Office in the U.S.; China Youth Corps; Overseas Chinese Affairs Commission, Defendants–Appellees.

No. 98–17166.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 2, 1999

Filed Feb. 3, 2000

Paul Gary Sterling (argued), Sterling & Clack, San Francisco, California, for the plaintiffs-appellants.

David Yang (argued), San Francisco, California, Charles Bond (argued), Gregory A, Mase, Torin A. Dorros, Bond, Gamma & Associates, PC, Berkeley, CA, for the defendants-appellees.

Before: PREGERSON, NOONAN, and O'SCANNLAIN, Circuit Judges.

O'SCANNLAIN, Circuit Judge:

We must decide whether the United States courts have jurisdiction to hear claims brought by a participant in a cultural tour organized and operated by a foreign government in its own country.

I

On August 8, 1993, Peter Sun, an American student of Taiwanese descent, drowned off the coast of Ken–Ting National Park in Taiwan where he was participating in a cultural tour sponsored by the government of Taiwan. His family ("the Suns") brought a wrongful death action against Taiwan, Taipei Economic and Cultural Representative Office ("TECRO," formerly Coordination Counsel for North American Affairs ("CCNA")), Overseas Chinese Affairs Commission ("OCAC"), and Chinese Youth Corps ("CYC") (collectively "Taiwan") in district court alleging jurisdiction under the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1330, 1602 et seq. ("FSIA").

Since 1967, Taiwan has organized and sponsored a summer-long study tour for youth of Taiwanese descent (the vast majority of whom have been American) to promote understanding of Chinese culture and history. In exchange for $400, Taiwan provided classes in Chinese language and culture, tours, sightseeing trips, room, and board. The promotional and application materials were sent from TECRO's office in Chicago and the applications were returned to the San Francisco office. As air transportation was the responsibility of the participants, the entire tour began and ended in Taiwan.

During the final sightseeing event of the program, Sun drowned. After the district court dismissed with leave to amend the Suns' first complaint for lack of subject matter jurisdiction and for failure to state a claim against CCNA, the Suns filed the complaint at issue here. The Suns' second

amended complaint alleged that Taiwan's negligence in failing to provide a reasonably safe tour with adequate supervision and failure to warn their son about the dangerous swimming conditions off the beach caused the death of their son. Taiwan filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction claiming that the Suns' suit was not based on commercial activity by Taiwan in the United States, as required by the FSIA. The district court found that the defendants' actions constituted "commercial activity," but concluded that the Suns' cause of action was not based on this commercial activity. Accordingly, the district court dismissed the complaint for lack of subject matter jurisdiction.

The Suns timely appealed.[1]

## II

■ The FSIA "provides the sole basis for obtaining jurisdiction over a foreign state in the courts of this country." *Argentine Republic v. Amerada Hess Shipping Co.*, 488 U.S. 428, 443, 109 S.Ct. 683, 102 L.Ed.2d 818 (1988). This Act codifies the restrictive, as opposed to absolute theory, of sovereign immunity in which "immunity is confined to suits involving the foreign sovereign's public acts, and does not extend to cases arising out of a foreign state's strictly commercial acts." *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 487, 103 S.Ct. 1962, 76 L.Ed.2d 81 (1983). Under the FSIA, unless a statutory exception applies, no court has subject matter jurisdiction over a claim brought against a foreign country or its instrumentalities. *See* 28 U.S.C. § 1604.

The exception to immunity relevant to this case provides that "[a] foreign state shall not be immune from the jurisdiction of courts of the United States ... in any case ... in which the action is based upon a commercial activity carried on in the United States by the foreign state...." 28 U.S.C. § 1605(a)(2). No party on this

appeal disputes the characterization of all the defendants as falling within the FSIA's definition of a foreign state, which includes "an agency or instrumentality of a foreign state." 28 U.S.C. §§ 1603(a), (b). Thus the question on appeal is whether the Suns' "action is based upon a commercial activity carried on in the United States."

## III

### A

■ First, therefore, we must decide whether the district court correctly held that the conduct of Taiwan constituted "commercial activity." The FSIA defines commercial activity as "either a regular course of commercial conduct or a particular commercial transaction or act." 28 U.S.C. § 1603(d). Further, "[t]he commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose." *Id.* The Supreme Court has held "that a state engages in commercial activity ... where it exercises only those powers that can also be exercised by private citizens, as distinct from those powers peculiar to sovereigns." *Saudi Arabia v. Nelson*, 507 U.S. 349, 360, 113 S.Ct. 1471, 123 L.Ed.2d 47 (1993) (quotations and citations omitted).

■ The district court found that Taiwan engaged in commercial activity. Promoting and operating a cultural tour is an activity that could be and regularly is conducted by private players in the market. Taiwan argues that its activities are not commercial because it operates this tour without charging the participants and runs it in order to promote understanding of Chinese culture and foster closer ties among Chinese people. The Supreme Court, however, has declared both of these considerations irrelevant. First, "the question is not whether the foreign government is acting with a profit motive or

---

1. The district court also dismissed the Suns' action against CYC for lack of personal juris-

diction. The Suns do not appeal this aspect of the district court's decision.

instead with the aim of fulfilling uniquely sovereign objectives." *Republic of Argentina v. Weltover, Inc.,* 504 U.S. 607, 614, 112 S.Ct. 2160, 119 L.Ed.2d 394 (1992) (holding that state refinancing of government bonds is commercial activity despite the governmental motivation). Second, "whether a state acts in the manner of a private party is a question of behavior, not motivation." *Nelson,* 507 U.S. at 360, 113 S.Ct. 1471; *see also* 28 U.S.C. § 1603(d) ("The commercial character of an activity shall be determined by reference to its nature, rather than by reference to its purpose."). Thus in evaluating Taiwan's activities we look to the state's acts as opposed to the reason for its acts. Here, Taiwan may be acting in order to promote Chinese culture and this may in fact be a motivation that would inspire very few private tour operators, but its actions as a promoter, organizer and guide are undoubtedly acts of a kind that are undertaken regularly by private parties. This activity "is of the type that an individual would customarily carry on for profit." *Schoenberg v. Exportadora de Sal, S.A. de C.V.,* 930 F.2d 777, 780 (9th Cir.1991) (holding that jurisdiction existed under the act where the Mexican government's activity consisted of maintaining a transportation link between its plant in Mexico and the plant's San Diego office). Thus the district court correctly held that Taiwan's conduct constituted commercial activity.

### B

Taiwan argues that the activity is not commercial because no private party would sponsor a non-profit cultural tour to foster ties with individuals of Chinese descent overseas and promote understanding of Chinese culture. The Act requires, however, that we look only to the nature, not the purpose, of the activity. *See* 28 § 1603(d). Trying to blur this distinction, Taiwan relies on *Joseph v. Office of the Consulate,* 830 F.2d 1018 (9th Cir.1987), for the proposition that "the purpose of an act may be relevant in defining its nature: often the essence of an act is defined by its purpose." 830 F.2d at 1023 (quotations and citations omitted). It also analogizes its activities to the compilation of a linguistic treatise found to be non-commercial in *Intercontinental Dictionary Series v. De Gruyter,* 822 F.Supp. 662 (C.D.Cal.1993). These arguments are unpersuasive.

*Joseph*'s mention that the nature and purpose of an act are interrelated should be read as little more than an observation. Taiwan's suggestion that this statement downplays the distinction between the two flies in the face of the Supreme Court's blunt admonition that the clear statutory language of the FSIA "unmistakably commands" distinguishing nature from purpose. *Weltover,* 504 U.S. at 617, 112 S.Ct. 2160. In fact, in *Weltover* the Supreme Court cast serious doubt on the specific language quoted in *Joseph* and relied on by Taiwan, as well as the notion that the distinction between the two is formalistic. *See id.* "We think this line of argument is squarely foreclosed by the language of the FSIA." *Id.* Reading this statement in *Joseph* to say no more than that nature and purpose are related is also consistent with its holding that a foreign sovereign leasing its land for its consulate is by its nature a commercial activity despite its obvious sovereign purpose. Furthermore it comports with the later statement in that case that "an activity is public and noncommercial if it is one which *only* a sovereign state can perform." *Joseph,* 830 F.2d at 1024 (emphasis added). Thus understood, the case offers Taiwan little support. While the purpose of Taiwan's tour may not be one that would motivate a private tour promoter, the operation of a cultural tour-the nature of the activity in question-is a type of activity a private party would undertake for profit.

Taiwan's position thus rests on *De Gruyter.* In *De Gruyter,* the district court found that the compilation of a comprehensive linguistic treatise was non-commercial activity because it was "not of the type an individual would customarily carry on for profit." 822 F.Supp. at 676. In light of *Weltover* and *Nelson,* this case provides

Taiwan with little support. Compiling academic treatises is the kind of activity that private publishers do perform. While a private publisher may have never compiled this specific treatise because of the cost or lack of profit, this reasoning defines "type of activity" too narrowly. The phrase does not refer only to the specific act performed by the government, but rather to a category of conduct. No private party would refinance government debt either, but the Supreme Court has held this activity to be commercial. *See Weltover*, 504 U.S. at 614–16, 112 S.Ct. 2160. "[T]here is nothing about the [publishing of the books] (except perhaps its purpose) that is not analogous to a private [publishing endeavor]." *Id.* at 615–16, 112 S.Ct. 2160. In publishing this treatise, the Australian government certainly did not exercise "powers peculiar to a sovereign." *Nelson*, 507 U.S. at 360, 113 S.Ct. 1471. Moreover, while correctly stating that profit motive is an improper consideration, the district court continually cited the lack of profit motive as reason why this was not an activity a private party would conduct. *See De Gruyter*, 822 F.Supp. at 676. Thus *De Gruyter* supplies insufficient authority for concluding that the district court incorrectly characterized Taiwan's activity as commercial.

### IV

■ In order for the district court to have subject matter jurisdiction, the Suns' action must be "based upon" Taiwan's commercial activity carried on in the United States. The Supreme Court has explained that the phrase "based upon" "is read most naturally to mean those elements of a claim that, if proven, would entitle a plaintiff to relief under his theory of the case." *Nelson*, 507 U.S. at 357, 113 S.Ct. 1471. The Ninth Circuit has specified that this requires a nexus between the action and the commercial activity. "The commercial activity relied upon . . . to establish jurisdiction must be the activity upon which the lawsuit is based. The focus must be solely upon those specific acts that form the basis of the suit."

*America West Airlines, Inc. v. GPA Group, Ltd.*, 877 F.2d 793, 796 (9th Cir. 1989) (citations and quotations omitted); *see also Barkanic v. General Administration of Civil Aviation*, 822 F.2d 11 (2d Cir.1987) (holding that there must be a nexus between the commercial activity in the United States and the cause of action).

In their complaint, the Suns alleged negligence. Specifically, they alleged:

(1) that while their son was a participant on the tour, "the defendants were under a general duty to provide a reasonably safe tour with adequate supervision;"

(2) that "On August 8, 1993, at Ken–Ting Beach, defendants possessed a duty to exercise reasonable care in selecting a safe and guarded beach," to advise participants of where to swim and warn them of swimming hazards, and to change the itinerary if the beach were unsafe; and

(3) that at no time did the defendants provide warnings regarding the dangers of swimming at the beach.

As presented to the district court in the Suns' Opposition to the Defendant's Motion to Dismiss, the theory of their case was that Peter's death was caused by a negligent failure to warn and a failure to exercise reasonable supervision. This is how the district court interpreted the theory of the Suns' case when it found that all the commercial acts on which this claim was based took place in Taiwan and consequently dismissed the action.

■ "[A]n action is based on commercial activity in the United States if *an element* of the plaintiff's claim consists in conduct that occurred in commercial activity carried on in the United States" *Sugimoto v. Exportadora De Sal, S.A. De C.V.*, 19 F.3d 1309, 1311 (9th Cir.1994) (emphasis added). The entire case need not be based on the commercial activity of the defendant. *See Nelson*, 507 U.S. at 358 n. 4, 113 S.Ct. 1471. Based on the Suns' argument to that point, the district court found that no ele-

ment of their claim consisted of conduct that occurred in this country. The defendants' administrative promotion and application management took place in the United States. But this activity formed no part of the basis of the Suns' claim, which at that point rested on the negligent selection of the beach, negligent supervision, and failure to warn. Such a result was correct under *Nelson.* In arriving at the conclusion that there was no jurisdiction under the FSIA because the action was not based on commercial activity, the Supreme Court looked only to the specific conduct underlying the action, i.e., the detention and beating. *Id.* at 358, 361, 113 S.Ct. 1471. The Court did not consider that the beatings were in connection with the running of the hospital, a commercial activity. *Id.* at 362–63, 113 S.Ct. 1471. Consistent with this precedent, the district court correctly concluded that the Suns' action was not based on Taiwan's activity in the United States. The promotion and application process in the United States was not conduct involved in proving any of the elements of the Suns' action. The only conduct relevant to the action was failure to take reasonable care in allowing the students to swim and failure to supervise them. All of this occurred in Taiwan.

█ This is not the end of the matter, however, because the Suns have changed their theory of the case in their appellate briefs to emphasize the nexus between their action and Taiwan's commercial activity in the United States. Relying primarily on California law, the Suns argue that, like other tour organizers, Taiwan was under an affirmative duty to exercise reasonable care by disclosing known information concerning prospective dangers on the tour and by not misleading prospective participants. Moreover, the Suns allege that Taiwan's requirement, made known to the Suns in the United States, that their son participate in the beach trip without disclosing the dangers constitutes the basis for their action for negligent misrepresentation.[2] In the briefs there is no longer any mention of negligent supervision. Although this argument differs significantly from that made in the district court on the motion to dismiss, the Suns cast the negligence language in their complaint broadly enough to cover this legal theory. Thus we cannot say that the issue was never raised previously and thus is not properly before us here.

Nevertheless, the district court should have the opportunity to review the Suns' claim first in order to determine whether, as currently cast, it is based on commercial activity that took place in the United States. Accordingly we remand to the district court so that it may make such a determination.[3]

AFFIRMED in part, REVERSED in part, and REMANDED. Each party shall bear their own costs.

---

**2.** The Suns' action is not a failure to warn claim as characterized by Taiwan. Under the Suns' legal theory, tour organizers have a duty of care which arises from their arrangement and promotion of the trip. This is not the same as the attempt by the plaintiffs in *Nelson,* criticized by the Supreme Court, to turn their intentional tort claim into a failure to warn claim. The Suns' point is not that tour organizers have a duty to warn of their negligent acts, but rather that there is a duty to take reasonable care in arranging a tour itinerary.

**3.** Because we remand to the district court to determine whether it has jurisdiction under the FSIA, we do not address Taiwan's arguments that the case should nevertheless be dismissed under the Act of State doctrine or the doctrine of forum non conveniens.