**INTERCONTINENTAL DICTIONARY SERIES, Plaintiff,**

v.

**Mouton DE GRUYTER et al., Defendants.**

**No. SA CV 92–667 AHS (RWRx).**

United States District Court, C.D. California.

May 14, 1993.

666

Thomas George Key, Bartholomew Henry & Key, Tustin, CA, for plaintiff.

Aton Arbisser, et al., Kaye Scholer Fierman Hays Handler, Sean Riley, et al., Christensen White Miller Fink Jacobs, Los Angeles, CA, for defendants.

MEMORANDUM OPINION ON ORDER
GRANTING DEFENDANTS'
MOTION TO DISMISS

STOTLER, District Judge.

## I.

## INTRODUCTION

On October 8, 1992, plaintiff Intercontinental Dictionary Series ("IDS") filed the complaint in this matter. The complaint asserts causes of action for copyright infringement, declaratory relief, breach of contract, negligence, interference with contract, interference with prospective economic advantages, fraud and deceit, breach of fiduciary duties, and civil conspiracy. On January 14, 1993, the action was stayed by stipulation and order between IDS and defendants Mouton de Gruyter, Walter de Gruyter & Co., Marie-Louise Liebe–Harkfort, H. Hassenpflug, and Werner Winter (collectively "the German defendants").

On January 19, 1993, defendants the Australian National University ("ANU"), Sir Gordon Jackson, the Research School of Pacific Studies ("RSPS"), R. Gerald Ward, Andrew Pawley, and Darrell Tryon (collectively "the ANU defendants") filed a Motion to Dismiss for Lack of Personal and Subject Matter Jurisdiction, or, in the Alternative, on the Basis of *Forum Non Conveniens*. Defendants concurrently filed a Request for Judicial Notice. Plaintiff filed opposition to the Motion to Dismiss, and its own Request for Judicial Notice, on February 2, 1993. On February 16, 1993, the ANU defendants filed their reply and an Objection to Evidence Offered in Support of Plaintiff's Opposition. The matter came on for hearing on the Court's March 1, 1993 calendar; after oral arguments from counsel, the Court granted the parties' unopposed Requests for Judicial Notice pursuant to Fed.R.Evid. 201, and took the ANU defendants' Motion to Dismiss and the Objection to Evidence under submission.

## II.

### FACTUAL BACKGROUND

Headquartered in Irvine, California, IDS is a private, unincorporated affiliation of linguistic scholars, many from prestigious universities throughout the world. The projects undertaken by IDS focus on the compilation and eventual publication of massive linguistic dictionaries covering languages spoken in various geographic regions of the world. The goal of IDS is to create and publish a series of such dictionary volumes using an orthographically uniform word list accessed through a computer database. Each volume in the series will be linked using the methodology and format developed by Dr. Mary Ritchie Key, the general editor of IDS' series of dictionaries.

In connection with its work, IDS has completed a manuscript entitled *"Intercontinental Dictionary Series,* Volume I: South American Indian Languages." As part of its planned series, IDS has also compiled a yet unpublished manuscript entitled *"Intercontinental Dictionary Series,* Volume II: Austronesian Languages" (the "IDS volume"), which is the centerpiece of this litigation.[1] Approximately half of the contributors to the latter Austronesian languages volume are citizens of the United States. Furthermore, plaintiff has obtained a Certificate of Registration of Copyright on this IDS volume.

The ANU, the national university of Australia, was created by the Australian National University Act of 1946. One of the statutorily enumerated functions of the ANU is to "encourage, and provide facilities for, post-graduate research and study, both generally and in relation to subjects of national importance to Australia." The Act, ¶ 6(a). The RSPS is a division of the ANU and the individual ANU defendants are employed in various capacities by the ANU and/or the RSPS. According to the complaint, defendant Jackson is the chancellor of the ANU, defendant Pawley is the Head of the Department of Linguistics at the ANU, defendant Tryon is the acting Head of the Department of Linguistics at the ANU, and defendant Ward is the Director of the RSPS.

On an unspecified date, the Australian government began the funding of a project in furtherance of the ANU's statutorily-defined objectives to research matters of importance to Australia and the surrounding Pacific region. The project resulted in the development of a yet unpublished work entitled the *Comparative Austronesian Dictionary* ("the CAD treatise"). Accompanying the CAD treatise are associated computer databases and word lists. Like the IDS volume, the CAD treatise is a linguistic dictionary that documents the Austronesian family of languages. According to defendants, at no time did any entity other than the ANU and its staff membership contribute any linguistic materials to the development of the CAD treatise. The project that culminated in the CAD treatise was funded by the Australian national government with more than 800,000 Australian dollars.

In its complaint, IDS asserts that it owns the CAD treatise, the related computer database, and the word lists covering the Austronesian languages for the following reasons: (1) it applied for registration of an early draft manuscript; (2) it developed the concept for a series of linguistic dictionary volumes covering different regions of the world; and (3) it hired Dr. Tryon as "volume editor" to develop the Austronesian manuscript as a volume of IDS's series of linguistic dictionaries. Plaintiff further alleges that the ANU defendants are infringing its copyright by developing the Austronesian materials to final form in the CAD treatise, by making an agreement with the German defendants to publish the CAD treatise, by representing that the CAD treatise is the property of the ANU defendants, and by refusing to turn over the CAD treatise to IDS. The gravamen of plaintiff's complaint is that the ANU defendants, most notably Dr. Tryon, have pirated the research and development undertaken in collaboration with IDS for its volume on the Austronesian

---

1. The term Austronesian refers to the family of languages spoken in the Pacific and Pacific Islands region; the Austronesian family of languages consists of approximately 1,200 languages spoken by more than 2,700,000 people.

languages and have created the CAD treatise as an infringing "spin-off" of the IDS volume.

## III.

### THE PARTIES' CONTENTIONS

#### A. *The ANU Defendants' Position:*

The ANU defendants argue that dismissal of the action is mandated under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602–11, because the ANU and the RSPS are agents or instrumentalities of the Australian government. *MOL, Inc. v. People's Republic of Bangladesh*, 736 F.2d 1326 (9th Cir.1984); *Gerritsen v. Escobar Y. Cordova*, 721 F.Supp. 253 (C.D.Cal.1988). Defendants note that the ANU was created by the Australian government and is treated as a governmental agency in Australian legislation. Moreover, defendants contend that the FSIA applies to the individual ANU defendants, since they are all sued in their official capacity as employees of the ANU.

Defendants continue that none of the exceptions to the FSIA apply to this case. Specifically, the ANU defendants argue that the "commercial activity" exception is inapplicable because none of the parties undertook the CAD project for profit. *Schoenberg v. Exportadora de Sal., S.A.*, 930 F.2d 777 (9th Cir.1991). According to defendants, the "international takings" exception does not deprive them of immunity since the exception pertains only to tangible property and because the property at issue was never present in the United States. *De Sanchez v. Banco Central de Nicaragua*, 770 F.2d 1385 (5th Cir.1985). Finally, the ANU defendants state that the "noncommercial torts" exception does not apply to the present case since the tort and the injury occurred outside the United States. *Persinger v. Islamic Republic of Iran*, 729 F.2d 835 (D.C.Cir.1984).

Defendants next submit that the action should be dismissed because the Court lacks personal jurisdiction over the ANU defendants because they have no "minimum contacts" with the United States or California. *Meadows v. Dominican Republic*, 628 F.Supp. 599 (N.D.Cal.1986). They argue that general jurisdiction is absent since the defendants lack the "continuous and system-

atic" contacts with the forum required for the exercise of such jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984). Furthermore, defendants state that the exercise of specific personal jurisdiction fails under the Ninth Circuit's three part test in *Haisten v. Grass Valley Medical Reimbursement*, 784 F.2d 1392 (9th Cir.1986): first, there is no affirmative conduct promoting business within the forum state, *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834 (9th Cir. 1986) and Dr. Tryon's contacts fall short of purposeful availment; second, the claims do not arise out of defendants' forum related activities, as evidenced by the complaint which repeatedly refers only to activities in Australia and Germany; and third, the exercise of jurisdiction would not be reasonable.

The ANU defendants also state that dismissal is warranted under the doctrine of *forum non conveniens*, because there is an adequate alternate forum and the balance of public and private factors weighs in favor of dismissal. *Lockman Foundation v. The Evangelical Alliance Mission*, 930 F.2d 764 (9th Cir.1991). Defendants argue that Australia offers comparable relief: the ANU defendants could sue and be sued, and individuals claiming copyright interests can pursue protection in the Australian Federal Court. Defendants further submit that Australian copyright law governs this case. In addition, the ANU defendants state that Australian courts could subpoena documents and witnesses, whereas the district court in California could not. Thus, defendants conclude that the action should be dismissed on *forum non conveniens* grounds.

Moreover, the ANU defendants argue that because United States copyright laws have no extraterritorial effect, the Court lacks subject matter jurisdiction over actions that take place entirely outside the United States. *DANJAQ S.A. v. MGM/UA Communications Co.*, 773 F.Supp. 194 (C.D.Cal.1991). Defendants note that the complaint speaks only of events which occurred in Australia and Germany.

Finally, defendants state that Sir Gordon Jackson should be dismissed because he died 14 months prior to the filing of this action. Fed.R.Civ.P. 17(b).

## B. *IDS' Opposition:*

IDS first argues that no evidence of a "sovereign" has been introduced and that the ANU defendants are not an instrumentality of any sovereign, since the ANU is a "separate" corporate entity severed from the Australian government. *See Edlow International Co. v. Nuklearna Elektrarna Krsko*, 441 F.Supp. 827 (D.D.C.1977). According to plaintiff, there is also no evidence that an authorized agent of a sovereign has ever requested immunity, which plaintiff believes constitutes a fatal procedural defect in the motion. IDS next asserts that the FSIA presumption of immunity is unavailable because defendants have not carried their burden of proof of demonstrating that ANU is an organ of a foreign state or that a majority of its shares are owned by a foreign state. Finally, plaintiff proffers that the concept of sovereign immunity as codified in the FSIA is antiquated and should be judicially abrogated by this Court.

Next, IDS argues that the "commercial activity" exception applies to this case, because the ANU defendants' activities were commercial in nature. *Joseph v. Office of Consulate General of Nigeria*, 830 F.2d 1018 (9th Cir.1987); *National American Corp. v. Federal Rep. of Nigeria*, 448 F.Supp. 622 (S.D.N.Y.1978). Plaintiff further contends that defendants have not focused on a specific activity so as to apply the "nature" of the activity test. IDS notes that the "Annual Reports" of the ANU identify IDS, acknowledge that the Austronesian project was to be published by IDS, and that the CAD treatise is not even mentioned until 1990. Plaintiff then proceeds to argue that the "nexus" requirement is satisfied because the collaboration, development, preparation, and delivery of the collected work took place in California.

Plaintiff further asserts that even if the ANU defendants are instrumentalities of a sovereign, the exception to the FSIA in 28 U.S.C. § 1605(a)(3) applies because the complaint alleges that defendants have possession of tangible property such as word lists, data disks, and the manuscript.

Regarding the FSIA, IDS also contends that the "noncommercial torts" exception applies since the contracts and the alleged misrepresentations took place in California. Moreover, plaintiff points out that defendants are engaged in activities in Hawaii, Guam, the Marianas, and Micronesia—all of which are under the jurisdiction of the United States.

During oral argument, counsel for plaintiff also asserted for the first time that the ANU defendants had waived immunity under the FSIA, based on a provision in the Australian National University Act.

IDS next submits that this Court has personal jurisdiction since the ANU defendants have systematic and continuous contacts with the United States and California. Plaintiff argues that "minimum contacts" are established by the very evidence submitted by the ANU defendants documenting their activities in Hawaii and California related to an Austronesian volume. IDS further contends that the defendants have purposefully availed themselves of the forum state's resources by virtue of Dr. Tryon's annual visits to California where he actively sought publication of the Austronesian materials. *Sher v. Johnson*, 911 F.2d 1357 (9th Cir.1990).

IDS also posits that dismissal for *forum non conveniens* is unwarranted. Plaintiff distinguishes this case from *Lockman* on the grounds that defendants have not copyrighted the CAD treatise in Australia, few of the Austronesian languages are spoken in Australia, and the largest market for the book will be the United States. Moreover, plaintiff states that the majority of witnesses are not in Australia, and that the acts and omissions occurred in California.

Procedurally, plaintiff asserts that the Court must accept all the facts alleged in the complaint as true, and may not consider disputed facts for purposes of this motion. Finally, IDS asserts that the death of Sir Jackson is unproven, or that leave to amend should be granted to name his successor or estate.

### C. *The ANU Defendants' Reply:*

Defendants submit that their motion is based on jurisdictional facts which the Court may adjudicate in determining the merits of the motion, and that the declarations filed in support of the motion go only to jurisdictional facts rather than the merits of the underlying lawsuit. *See Thornhill Pub. v. General Telephone & Electronics*, 594 F.2d 730 (9th Cir.1979).

The ANU defendants then argue that plaintiff's contention that an official must request immunity under the FSIA lacks any legal authority; according to defendants, the FSIA was enacted to overcome the past procedural requirements and it preempts the procedures suggested by plaintiff.

Defendants proceed to argue that plaintiff misconstrues the "agency or instrumentality" analysis under the FSIA by focusing on the degree of government control or "political interference." The ANU defendants distinguish *Edlow*, a case where the court faced a socialist government that technically owned all property in the sovereign; for this reason, the court looked to factors such as political control. Defendants also submit that the comparison to majority ownership of a corporation is nonsensical in the context of the present litigation.

Next, the ANU defendants contend that IDS misconstrues the FSIA itself when it argues that ANU and the RSPS are not an "agency" of the Australian government since they are separate corporate bodies capable of suing and being sued; defendants note that in order to have agency status in the first instance, an entity must be a separate "legal person." 28 U.S.C. § 1603(b)(1). According to defendants, this status is a clear stamp of agency or instrumentality status. *Richmark Corp. v. Timber Falling Consultants, Inc.*, 747 F.Supp. 1409 (D.Or.1990); *Bowers v. Transportes Navieros Ecuadorianos*, 719 F.Supp. 166 (S.D.N.Y.1989). After repeating the facts regarding the establishment of the ANU, its funding, and the state-directed objectives, the ANU defendants note that California's own university system is recognized as a state "instrumentality" for purposes of 11th Amendment immunity. *See BV Engineering v. University of California, Los Angeles*, 858 F.2d 1394 (9th Cir.1988); *Jackson v. Hayakawa*, 682 F.2d 1344 (9th Cir.1982).

With regard to the "commercial activity" exception to the FSIA, defendants argue that two fundamental steps are involved. The Court must: (1) identify the fundamental nature of the activity; and (2) identify whether the activity is one customarily carried on for profit by private individuals. *Schoenberg, supra*. Defendants state that IDS has misidentified the fundamental nature of the activity by labeling it "pirate publication." They assert "pirating" is a complex legal cause of action rather than an "activity." According to defendants, IDS' identification of the "activity" ignores the allegations of its own complaint, which focus on the unauthorized development and publication of an academic treatise. Defendants assert that private individuals do not undertake highly technical, computer assisted linguistic dictionaries for profit; to the contrary, such projects are normally a government assisted activity. Therefore, defendants conclude the exception is inapplicable.

In reply to plaintiff's argument concerning the "international takings" exception, defendants note that IDS' own complaint alleges that defendants are in possession of the final CAD manuscript located in Canberra, Australia. Complaint, ¶ 26. Thus, the ANU defendants conclude that IDS is asserting an intangible ownership interest in the materials.

Regarding the "noncommercial torts" exception, defendants argue that each and every element of the tort must occur in the United States. *Persinger, supra*. Defendants proceed to note that the contract with Dr. Tryon was entered into in Australia. Additionally, the exception does not apply to misrepresentation or deceit. 28 U.S.C. § 1605(a)(5)(B). Finally, defendants argue that any continuing activity in field studies of Austronesian languages does not amount to any form of tortious conduct, and that the FSIA definition of United States applies only to possessions, not trusteeships such as those areas listed by IDS.

As to personal jurisdiction, defendants submit that "minimum contacts" must be es-

tablished on an individualized basis in order to support specific personal jurisdiction. They then refute the arguments proffered by IDS as to both specific and general jurisdiction. The ANU defendants note that Dr. Ward and Dr. Pawley had sporadic contact with the United States and California. Moreover, most of Dr. Tryon's visits over the past ten years have constituted one-week layovers in travel; he undertook only two trips whose primary purpose was to assist IDS, and he always traveled as a salaried member of the ANU.

As to *forum non conveniens,* the ANU defendants argue that the fact that Australia would be an adequate alternative forum is uncontroverted. Moreover, defendants argue that the private factors weigh strongly in favor of the Australian forum; witnesses and documentary evidence central to the CAD project are located in Australia, both of which are subject to the Australian court's subpoena power whereas they are not subject to this Court's power. Defendants also note that plaintiff is not an American citizen.

Finally, the ANU defendants assert that the absence of infringing activity in the United States remains uncontroverted. Defendants argue that reliance on respondeat superior based on the alleged activities of Dr. Tryon is misplaced, since the complaint nowhere alleges that infringing activities occurred in the United States and because an employer-employee relationship alone is insufficient to establish the doctrine. Accordingly, the ANU defendants conclude that the action should be dismissed on all the foregoing grounds.

### 1. Defendants' Objections to Evidence:

The ANU defendants argue that the Court should strike in their entirety the Declaration of Facts submitted by Mary Key, the declaration of Mary Key, and the declaration of Michael Tugwell because they contain no averment of personal knowledge. In the alternative, defendants highlight specific portions of the evidence, which they claim should be stricken as mere argument, hearsay, or legal conclusions instead of facts.

### IV.

### DISCUSSION

### A. The Standard:

In general, when dealing with an attack on the Court's subject matter jurisdiction, "the trial court may proceed as it never could under Rule 12(b)(6) or Fed.R.Civ.P. 56 ... [N]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of the jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist." *Thornhill Pub. v. General Telephone & Electronics,* 594 F.2d 730, 733 (9th Cir.1979). A motion to dismiss for lack of subject matter jurisdiction should be treated under the summary judgment standard only when the jurisdictional facts are intertwined with the merits of the complaint. *Id.* at 733–35.

In the present matter, the jurisdictional issues raised under the FSIA and *forum non conveniens* are not intertwined with the merits of the complaint. Plaintiff attempts to incorporate the incorrect standard under Fed.R.Civ.P. 12(b)(6)—where the Court must accept the allegations of the pleadings as true—into the pending motion. The Court will instead be guided by the proper standard under Fed.R.Civ.P. 12(b)(1) and (2), and will evaluate the disputed facts, to the extent any exist, to reach the merits of the jurisdictional claims. *See Thornhill,* 594 F.2d at 733.

### B. The FSIA:

Under the general provisions of the FSIA, "a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States." 28 U.S.C. § 1604. A foreign state includes an agency or instrumentality of that state. 28 U.S.C. § 1603(a). Unlike most statutes that make immunity a defense to an action, the absence of immunity is a jurisdictional requirement under the FSIA. *MOL, Inc. v. People's Republic of Bangladesh,* 736 F.2d 1326, 1328 (9th Cir. 1984).

A determination of whether this Court has subject matter jurisdiction requires the resolution of two primary issues. First, the Court must determine whether the ANU defendants are an "agent or instrumentality" of the Australian government so as to fall within the general provision of the FSIA. Assuming the ANU defendants are an agency or instrumentality of the Australian government, the Court must then determine whether an exception to the FSIA applies to defendants' activities. Furthermore, once IDS offers evidence that an exception to the FSIA applies, "the party claiming immunity bears the burden of proving by a preponderance of the evidence that the exception does not apply." *Joseph v. Office of Consulate General of Nigeria,* 830 F.2d 1018, 1021 (9th Cir. 1987).

■ As an initial matter, plaintiff's argument that an official of the Australian government must request immunity before the Court may even consider immunity under the FSIA is wholly without merit. At the hearing on this matter, counsel for IDS conceded that no such procedural requirement exists. Nonetheless, counsel repeatedly asserted that the Court should adopt such a requirement as a "practical matter;" specifically, counsel requested that the Court defer ruling on the present motion until officials at the Australian embassy could be contacted, presumably so that their decision would dictate the decision of this Court.

The Court declines to adopt the "practical" procedure urged by IDS because it lacks any legal authority or logical support. The FSIA contains no provision even remotely approaching a requirement that an official of a foreign state request immunity prior to a court's consideration of that issue. Moreover, Congress enacted the FSIA in order to overcome the procedural obstacles plaintiff now asks the Court to impose as a "practical matter." *See, e.g., Gregorian v. Izvestia,* 658 F.Supp. 1224, 1229 (C.D.Cal.1987), *aff'd in part, rev'd in part on other grounds,* 871 F.2d 1515 (9th Cir.1989), *cert. denied,* 493 U.S. 891, 110 S.Ct. 237, 107 L.Ed.2d 188 (1989). Accordingly, the Court rejects IDS' arguments as lacking any legal or practical support, and proceeds to consider the ANU defendants' potential immunity under the FSIA absent an officially sanctioned request.

1. *"Agency or Instrumentality" Status:*

The FSIA defines agency or instrumentality as any entity which is: (1) a separate legal person; and (2) an organ of a foreign state or a political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state; and (3) neither a citizen of a State of the United States, nor created under the laws of any third country. 28 U.S.C. § 1603(b)(1–3).

■ In order to qualify as an "agency or instrumentality" under the statutory definition contained in the FSIA, an entity must first constitute a separate legal person. Broadly speaking, the provision "is intended to include a corporation, association, foundation, or any other entity which, under the laws of the foreign state where it was created, can sue or be sued in its own name, contract in its own name, or hold property in its own name." *Bowers v. Transportes Navieros Ecuadorianos,* 719 F.Supp. 166, 170 (S.D.N.Y.1989).

■ Initially, plaintiff focuses on the "separateness" of the ANU defendants from the Australian government, apparently in support of its argument that the ANU defendants are not an agency or instrumentality of a foreign state. Plaintiff's argument lacks merit. Under the statutory definition of agency or instrumentality, the fact that the Australian legislature created the ANU as a separate "body corporate" and thus a separate legal person is an express requirement; moreover, the fact that the ANU and RSPS are capable of suing and being sued, of holding property, and of contracting strongly militates in favor of a finding of agency or instrumentality status. Although the institutions enjoy academic freedom, the declarations submitted by defendants also substantiate that the ANU and RSPS are treated as governmental agencies in Australia.

■ As to the second element of the "agency or instrumentality" determination, IDS focuses on the fact that the ANU defendants are not entities where a majority of shares or other ownership interest is owned

by a foreign state. Defendants concede this fact and argue that the analogy to a corporation is nonsensical. In its arguments to the Court, IDS ignores the fact that 28 U.S.C. § 1603(b)(2) is framed in the alternative. Under this section, an entity may be considered an agency or instrumentality of a foreign state if it is either an "organ" of that state or if a majority of its shares are owned by a foreign state. This case presents the scenario where a defendant falls under the rubric of an "organ of a foreign state" rather than under the corporate context defined by a majority ownership of shares. For example, the ANU and the RSPS were formed by the Australian government to further academic interests of national importance; the salaries of its employees (including the named individual Australian defendants) are paid by the Australian government; the ANU must submit Annual Reports and is subject to funding by the Australian government; and the ANU and RSPS are treated as "agencies" in other legislation. Despite their relative academic independence, the ANU defendants should be considered "organs" of the Australian government.

The third element of 28 U.S.C. § 1603(b) requires only that an entity cannot be a citizen of the United States or be organized under the laws of any nation save the foreign state in question. *Edlow Intern. v. Nuklearna Elektrarna Krsko*, 441 F.Supp. 827 (D.D.C.1977). Neither party contests whether the ANU and the RSPS fall within this prong of the "agency or instrumentality" definition.

In addition to the statutorily enumerated factors, plaintiff relies on *Edlow, supra,* for its contention that the degree of "political control" is determinative of the agency or instrumentality determination. In *Edlow,* a U.S. corporation sued a Yugoslavian workers' organization to recover broker's fees supposedly due on a sale of uranium. The Yugoslavian state had a socialist government, whereby all property was owned by the state. Defendant brought a motion to dismiss under the FSIA. Based on these circumstances and the determination that property ownership alone was insufficient to confer instrumentality status in a socialist system, the

court found it appropriate to examine the level of day to day control the state exercised over the defendant workers' organization. After reviewing the level of control, the court concluded that the defendant was not an organ of the state since the state exercised no direct control over the daily operations of the workers' organization. As a result, the court concluded that it lacked subject matter jurisdiction over the action under the FSIA. *Edlow,* 441 F.Supp. at 832.

*Edlow* is not controlling in the circumstances of the present case. The Australian government is democratic rather than socialist, and the Court therefore declines to scrutinize the level of daily control exercised by the government over the ANU and the RSPS. In other words, the Court sees no reason to adopt an approach tailored to unique circumstances in the absence of those circumstances. However, the Court notes that the Australian national government exercises control over the ANU defendants through enabling statutes, the annual appropriations made by the government, management of the public fisc, and the other factors previously discussed.

Further, the Court questions the conclusion reached in *Edlow.* Since the *Edlow* court found that the workers' organization was not an "organ" of the state because the Yugoslavian government exercised no daily control over the organization, that organization would not constitute an agency or instrumentality as currently defined by the FSIA. In light of this determination, the organization would have no immunity as an agency or instrumentality of a foreign state. Accordingly, the district court would have had subject matter jurisdiction over the action; *Edlow,* however, reached the opposite conclusion.

■ In support of their contention that the ANU and RSPS are an "agency or instrumentality" of the Australian state, defendants also point out that their situation is highly analogous to the state supported university systems in California. The Ninth Circuit has held that the University of California system and the California State University system are "instrumentalities" of the state of California for 11th Amendment pur-

poses. *See Jackson v. Hayakawa,* 682 F.2d 1344 (9th Cir.1982); *BV Engineering v. Univ. of Cal., Los Angeles,* 858 F.2d 1394 (9th Cir.1988). The factors determinative of 11th Amendment immunity are analogous to those for determining "agency or instrumentality" status under the FSIA. The Court finds the analogy to academic institutions within the United States persuasive, and it further buttresses the Court's conclusion that the ANU and RSPS are agencies or instrumentalities of the Australian government.

■ The Court also concludes that the individual ANU defendants are agencies or instrumentalities of a foreign state for purposes of the present motion. Under *Chuidian v. Philippine Nat. Bank,* 912 F.2d 1095 (9th Cir.1990), individuals may be entitled to immunity under the agency or instrumentality provision of the FSIA when they are acting in their official capacity. IDS itself has alleged that the individual ANU defendants were acting in their official capacity in the course of events that led to the filing of plaintiff's complaint. Moreover, the parties have treated the individual defendants in the same fashion as the university defendants for immunity purposes. Thus, Sir Gordon Jackson, Dr. Tryon, Mr. Pawley, and Mr. Ward should be afforded immunity to the same extent as the institutional ANU defendants.

### 2. *The "Commercial Activity" Exception to the FSIA:*

■ The commercial activity exception to the FSIA deprives an "agency or instrumentality" of foreign state immunity in cases where:

the action is based upon a commercial activity carried on in the United States by a foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that causes a direct effect in the United States.

28 U.S.C. § 1605(a)(2). Plaintiff relies on the first clause of the exception, and its application requires two prerequisites: first, the foreign entity must be engaged in a commer-

cial activity; and second, the commercial activity must have substantial contact with the United States. 28 U.S.C. § 1603(e); *See Schoenberg v. Exportadora de Sal., S.A. de C.V.,* 930 F.2d 777 (9th Cir.1991) (the cause of action must have a significant nexus with the commercial activity).

The FSIA generally defines "commercial activity" as:

either a regular course of commercial conduct or a particular commercial transaction or act. The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose.

28 U.S.C. § 1603(d). Courts have noted that the statutory definition of the term "commercial" leaves much to be desired and is "distinguished only by its diffidence." *See Saudi Arabia, King Faisal Special Hospital v. Nelson,* 507 U.S. ——, ——, 113 S.Ct. 1471, 1478, 123 L.Ed.2d 47, 60 (1993). However, such diffidence has not left the courts free to create their own definitions, since the Supreme Court has held that the commercial activity exception to the FSIA adopts the so-called "restrictive" theory of sovereign immunity. *Republic of Argentina v. Weltover,* 504 U.S. ——, 112 S.Ct. 2160, 119 L.Ed.2d 394 (1992). By incorporating the "restrictive" theory into the FSIA, the Supreme Court has concluded that "when a foreign government acts, not as a regulator of a market, but in the manner of a private player within it, the foreign sovereign's actions are 'commercial' within the FSIA." *Weltover,* 504 U.S. at ——, 112 S.Ct. at 2166, 119 L.Ed.2d at 405. In other words, a foreign state engages in commercial activity where it exercises "only those powers that can also be exercised by private citizens" as distinct from those "powers peculiar to sovereigns." *Nelson,* 507 U.S. at ——, 113 S.Ct. at 1479, 123 L.Ed.2d at 61 (citing *Weltover,* 504 U.S. at ——, 112 S.Ct. at 2166, 119 L.Ed.2d at 405).

■ In order to ascertain whether a particular activity is commercial, the Court must also examine the "nature" rather than the "purpose" of the activity. 28 U.S.C. § 1603(d). Under the statutory language,

which is clear in its mandate yet somewhat elusive in its application,

> the question is not whether the foreign government is acting with a profit motive or instead with the aim of fulfilling uniquely sovereign objectives. Rather, the issue is whether the particular actions that the foreign state performs (whatever the motive behind them) are the *type* of actions by which a party engages in 'trade and traffic or commerce.'

*Weltover,* 504 U.S. at ——, 112 S.Ct. at 2166, 119 L.Ed.2d at 405 (emphasis in original). The inquiry into whether an activity is "commercial" must center, therefore, on the actual behavior of a foreign state, rather than the motivation behind that behavior. *Nelson,* 507 U.S. at ——, 113 S.Ct. at 1479, 123 L.Ed.2d at 61; *See also Joseph,* 830 F.2d at 1023 (a court's inquiry must be on the nature of the activity involved rather than the purpose of the activity at issue). In addition, the court must address the *specific* acts that form the basis of a lawsuit. In other words, examination must center on "whether the particular conduct giving rise to the claim in question actually constitutes or is in connection with commercial activity, regardless of the defendant's generally commercial or governmental character." *Joseph,* 830 F.2d at 1023.

Several courts have reasoned that the purpose of an act may be relevant to determining its nature. *Id.; De Sanchez v. Banco Central de Nicaragua,* 770 F.2d 1385, 1393 (5th Cir.1985) (essence of an act may be defined by its purpose). However, the Supreme Court has cautioned that the FSIA "unmistakably commands" that a distinction be drawn between the purpose and the nature of an activity. *Weltover,* 504 U.S. at ——, 112 S.Ct. at 2167, 119 L.Ed.2d at 406–407. Accordingly, the Court must consider only "the outward form of the conduct that the foreign state performs" rather than the "reason why the foreign state engages in the activity." *Id.* As a result, the Court finds that the purposes behind the ANU defendants' activities are irrelevant, and shall not consider them in determining whether their activities are "commercial" for purposes of the FSIA.

### a. *The "activity" at issue:*

Prior to analyzing the "commercial" or "non-commercial" nature of the ANU defendants' activities, the Court must first define the "activity" which forms the basis of plaintiff's allegations. A close reading of the allegations contained in the complaint and the papers filed by the parties indicates that the specific acts and activities engaged in by the ANU defendants should be categorized as the research and development of a complex, academic linguistic treatise.

The legal label "pirating" offered by plaintiff as defining the scope of the activities involved in this lawsuit detracts from the inquiry into the particular conduct underlying that label. The Court therefore rejects plaintiff's attempt to classify the defendants' actions as "pirating," since such a classification is inconsistent with the necessary focus on the specific acts that form the basis of plaintiff's complaint. *See Joseph,* 830 F.2d at 1023. Moreover, such a classification could lead to the conclusion that unlawful activities are not performed by sovereigns, thereby defeating immunity in many instances. Additionally, counsel for plaintiff repeatedly asserted during oral argument that the activity engaged in by both plaintiff and defendants was the compilation of data and research for an academic treatise on the Austronesian languages. In sum, the activities alleged in the complaint, regardless of the legal labels a party may attach to them, revolve around the compilation of the CAD treatise and the IDS volume on Austronesian languages.

### b. *The nature of the activity:*

The compilation of materials to create a complex, linguistic dictionary falls outside the more routine classifications assigned to activities as either "commercial" or "non-commercial" within the meaning of the FSIA. On the one hand, the court in *Joseph* determined that the leasing of property by a consulate, even though not for profit, was a "commercial activity" because it is normally carried on by private parties for profit. Similarly, a state operated airline engages in "commercial activity" under the FSIA when it transports passengers for potential commercial dealings. *See Schoenberg,* 930 F.2d at 780–

81. Further, the rescheduling of bonds by a foreign government, despite its asserted purpose in restructuring the national debt to control a domestic credit crisis, is "commercial" when the bonds are freely negotiable debt instruments that can be traded by private parties in the international market. *Weltover*, 504 U.S. at ——, 112 S.Ct. at 2166, 119 L.Ed.2d at 405. On the other end of the spectrum from the previous business-related acts, the exercise of a foreign state's police powers and the abuse of those powers are "noncommercial" for purposes of the FSIA because they are "peculiarly sovereign in nature." *Nelson*, 507 U.S. at ——, 113 S.Ct. at 1479, 123 L.Ed.2d at 61.

The facts of the present matter offer no simple resolution of the "commercial activity" analysis and render the identification of the nature of the activity more problematic than the examples presented to the Court. As in *Joseph, Schoenberg*, and *Weltover*, for example, the compilation of a linguistic treatise by IDS and the ANU defendants is not one that only a sovereign can perform; this factor therefore militates in favor of finding that the activity is "commercial" in nature. Nonetheless, the compilation of a linguistic treatise spanning decades and the lifetimes of many scholars is not "of the type an individual would customarily carry on for profit." *Schoenberg*, 930 F.2d at 780, *citing Letelier v. Republic of Chile*, 748 F.2d 790, 797 (2nd Cir.1984). Further, it is dubious whether the ANU defendants were acting "in the manner of a private player within [the market]." *Weltover*, 504 U.S. at ——, 112 S.Ct. at 2166, 119 L.Ed.2d at 405. The compilation of a treatise of the magnitude of the CAD treatise or the IDS volume may also lack one of the crucial indicia enunciated by the Supreme Court; the particular acts performed by the ANU defendants are not "the *type* of actions by which a party engages in 'trade and traffic or commerce.'" *Id.*

Based on its consideration of the facts and the allegations of plaintiff's complaint, the Court concludes that the ANU

defendants' activities are "noncommercial" and academic in nature, rather than "commercial." First, a private party operating in the market would not normally 'trade and traffic' in the research and development of a complex, academic treatise. Further, although the absence of a profit motive is generally irrelevant because it focuses on a particular activity's purpose, the Court notes that the absence of profit motive may be relevant in this instance. Research toward the compilation of a technical, linguistic treatise constitutes an academic or scholarly endeavor, and the lack of a profit motive is characteristic of that very nature; in other words, the nature and purpose of the activity coincide.[2] Hence, the Court finds that lack of profit motive is relevant to the nature of the ANU defendants' activities. Additionally, the ANU defendants conducted their enterprise on a state-funded basis, in furtherance of a stated policy of researching topics of national importance. This relevant factor also suggests that the nature of the activity involved was not commercial. *See Joseph*, 830 F.2d at 1023.

The combination of the foregoing leads the Court to the conclusion that the nature of the activity is "academic" rather than "commercial." The creation of massive, scholarly texts are not normally undertaken by 'private players in the market' of trade or commerce, and the acts of the ANU defendants are collaborative, academic, and non-profit in nature. The Court's independent conclusion is reinforced by the repeated assertions of counsel at oral argument that the research and development of the Austronesian materials by both IDS and the ANU defendants were undertaken for academic and scholarly purposes, belying IDS' previous assertions that the "commercial activity" exception should apply.

*c. Nexus:*

Even if the research, development, and alleged pirating of the Austronesian materials by the ANU defendants is considered

---

**2.** This unique factor distinguishes the present matter from cases such as *Weltover* and *Joseph, supra.* In those cases, the parties argued that an otherwise commercial activity should be deemed "non-commercial" because the foreign state undertook the activity for a motive unrelated to profit. The argument was rejected in both instances, since it shifted the inquiry to the purpose rather than the nature of the activity involved.

a "commercial activity," plaintiff has failed to demonstrate the required "substantial contact" with the United States. 28 U.S.C. § 1603(e). The substantial contact of the defendants is with Australia and its surrounding regions rather than the United States; defendants compiled the allegedly pirated material, sought to have it published, and refused to deliver the final product in Australia. Moreover, plaintiff itself alleges that although final delivery of the completed volume of the disputed materials was to be in California, the allegedly infringing version of the CAD treatise is located in Canberra, Australia. Given the foregoing, plaintiff fails to demonstrate the required "nexus," even if the ANU defendants' activities may be characterized as commercial in nature.

### 3. The "Noncommercial Tort" Exception to the FSIA:

Pursuant to 28 U.S.C. § 1605(a)(5), a foreign entity is not immune under the FSIA in any case:

> ... in which money damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state or any official or employee of that foreign state while acting within the scope of his office or employment.

Claims for deceit, misrepresentation, or interference with contract rights are expressly precluded from this exception. See 28 U.S.C. § 1605(a)(5)(B). Moreover, in order for the "noncommercial tort" exception to be applicable, both the tortious acts or omissions and the injury must occur within the United States. Persinger v. Islamic Republic of Iran, 729 F.2d 835, 842 (D.C.Cir.1984).

To the extent plaintiff relies on alleged fraud and misrepresentations occurring in the United States, and/or interference with contract to support its claim that this exception applies, the FSIA itself clearly precludes application of the exception. 28 U.S.C. § 1605(a)(5)(B); See Complaint, Causes of Action 5–7. Moreover, the "contract" allegedly entered into by Dr. Tryon, which was actually an application for a Foreign Exchange Program, was signed in Australia.

Plaintiff's fourth cause of action for negligence lacks specifics about the duty, breach and injury which are alleged; nonetheless, IDS fails to demonstrate that the elements of the asserted negligence and the injury complained of both occurred in the United States. First and foremost, plaintiff's allegations and the evidence submitted to the Court demonstrate that plaintiff has not suffered any "damage to or loss of property" under the guise of its negligence claim, as required by 28 U.S.C. § 1605(a)(5). Moreover, even assuming damage to "property," the alleged breach of the ANU defendants' asserted duties to deliver the final CAD manuscript and to act in a scholarly manner occurred in Australia, not in the United States; the continuing asserted tortious acts and omissions of refusing to return misappropriated property are occurring in Australia. Further, the injury from the alleged wrongful pirating of plaintiff's Austronesian materials apparently occurred either in Australia or Germany (where the attempted publication occurred) rather than the United States. Defendants' alleged tortious conduct and plaintiff's injury therefore have not both occurred within the United States. 28 U.S.C. § 1605(a)(5); See Persinger, 729 F.2d at 842.

Finally, counsel for plaintiff clarified at oral argument that the Court's jurisdiction over the entire action is premised on federal question and supplemental jurisdiction rather than diversity jurisdiction. 28 U.S.C. § 1331; 28 U.S.C. § 1367(c). Assuming this is the case, the Court would find it appropriate to dismiss plaintiff's supplemental state law causes of action two through nine. These state claims appear to substantially predominate over the copyright cause of action over which the district court has original jurisdiction in terms of proof, the scope of the issues raised, and the comprehensiveness of the remedy sought. United Mine Workers v. Gibbs, 383 U.S. 715, 725–27, 86 S.Ct. 1130, 1138–40, 16 L.Ed.2d 218 (1966). In addition, factors independent of jurisdictional considerations, such as the likelihood of jury confusion in treating divergent legal theories of relief, would justify separating the supplemental state claims from the federal claims

for trial. *Id.* In the event that plaintiff's supplemental claims were dismissed, plaintiff would have no "tort" upon which to base the applicability of the "noncommercial tort" exception.

For all the foregoing reasons, the Court concludes that the "noncommercial tort" exception to the FSIA is inapplicable to the facts of the present case.

### 4. The "International Takings" Exception to the FSIA:

Pursuant to 28 U.S.C. § 1605(a)(3), a foreign entity is not immune under the FSIA in any case:

> in which rights in property taken in violation of international law are in issue and that property or any property exchanged for such property is present in the United States in connection with a commercial activity carried on in the United States by the foreign state; or that property or any property exchanged for such property is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States.

The statute establishes two scenarios for the application of the exception: one where the property must be present in the United States, and the other, where an agent or instrumentality owns the property in question and conducts commercial activity in the United States.

■ The ANU defendants have asserted that this exception does not apply to intangible property. *De Sanchez v. Banco Central de Nicaragua,* 770 F.2d 1385 (5th Cir.1985). Although the *De Sanchez* court found a determination of the question unnecessary, it delineates why courts have restricted the exception to tangible property and suggests that the court would have adopted such an interpretation if necessary to its holding. *Id.* at 1395. In light of the statutory language, which appears by its language to require a taking of property in violation of international law, the Court approves of the rationale discussed in *De Sanchez.* Moreover, the exclusion of intangible property rights also flows by analogy to the Hickenlooper Exception, which provides that the federal courts

may not invoke the act of state doctrine based on "a confiscation or other taking ... by an act of [a foreign] state in violation of the principles of international law." 22 U.S.C. § 2370(e)(2); *see also De Sanchez,* 770 F.2d at 1395 (comparing Hickenlooper Exception to FSIA). Plaintiff offers no argument to the contrary, and agreed at oral argument that the international takings exception should be applied only to tangible property. Thus, for purposes of the present motion at least, the intangible intellectual property rights or the right to receive payment on a contract alleged by IDS are not grounds for applying the exception.

Regarding application of the "international takings" exception, plaintiff simply states that word lists, disks, and manuscripts associated with the IDS volume and the CAD treatise are tangible forms of property. As noted above, the exception for takings of tangible property can apply in two circumstances. The complaint at ¶ 26 and the declarations filed by defendants substantiate that the final CAD manuscript and the related computer materials are located in Canberra, Australia; they have never been taken to the United States. Plaintiff's interest in these materials is "intangible" *and* not present in the United States as required by the first part of the exception to the FSIA. Alternatively, while the ANU defendants "own" these items as an agency or instrumentality of the Australian government, they are not engaging in a "commercial activity" within the United States, so as to satisfy the second possibility for application of the exception— namely, that the property is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States. Accordingly, because the ANU defendants are not engaging in a commercial activity with substantial contacts to the United States, the Court determines that the "international takings" exception is inapplicable on the facts of the present case.

### 5. The Waiver Exception to the FSIA:

■ During oral argument, counsel for plaintiff asserted for the first time that defendants had waived their immunity based on

the Australian National University Act of 1946. Specifically, IDS pointed to ¶ 4(2)(a) of the Act, which provides that the ANU shall be capable of "suing and being sued in all courts" as evidence of a waiver.

Pursuant to 28 U.S.C. § 1605(a)(1), a foreign entity is not immune under the FSIA in any case "in which the foreign state has waived its immunity either explicitly or by implication." Although the provision cited by plaintiff speaks of suing and being sued in *all* courts, the Court declines to adopt plaintiff's interpretation of the Australian National University Act of 1946 as a wholesale waiver of immunity in courts throughout the world. Rather, a reasonable construction of the provision suggests that it was intended to apply only to the Australian judicial system. The Act nowhere mentions waiver of immunity; neither does it state that the provision should be interpreted broadly as a submission by the ANU to the jurisdiction of courts in sovereignties outside Australia. Accordingly, the Court finds that ¶ 4(2)(a) of the Australian National University Act does not operate as a waiver of immunity under 28 U.S.C. § 1605(a)(1).

## C. Forum Non Conveniens:

■ In order to obtain a dismissal based on *forum non conveniens*, a party must show: "(1) the existence of an adequate alternative forum, and (2) that the balance of public and private interests favors dismissal." *Lockman Foundation v. Evangelical Alliance Mission*, 930 F.2d 764, 767 (9th Cir. 1991). The showing made by a defendant must overcome the strong deference due the plaintiff's choice of a forum. *Id.*

### 1. Adequate Alternative Forum:

■ The requirement of an adequate alternative forum is satisfied in the normal course of events when a defendant is amenable to process in the other jurisdiction. *Id.* IDS does not dispute that Australia would be an adequate forum for resolution of this dispute. The ANU defendants have verified in the papers and in open court that they are amenable to service in that jurisdiction, thereby satisfying the standard test. Moreover, defendants have lodged numerous docu-

ments indicating that the copyright laws in Australia are comparable to those in the United States, and that plaintiff could have a remedy in Australia. At the hearing on defendants' motion, plaintiff was unable to point out any significant differences between the copyright laws in the United States and Australia which could deprive plaintiff of the remedy it seeks.

### 2. Balancing of Private and Public Factors:

#### a. Private Interest Factors:

■ The private interest factors to be considered in the *forum non conveniens* calculus are "ease of access to sources of proof; compulsory process to obtain the attendance of hostile witnesses, and the cost of transporting friendly witnesses; and other problems that interfere with an expeditious trial." *Id.* at 769.

#### (i) Sources of proof:

■ The evidence necessary to render a final decision on this matter rests in the United States, Australia, and throughout the world. As in *Lockman*, plaintiff alleges that many of the alleged misrepresentations and other events giving rise to the lawsuit occurred in California. However, the majority of the critical documentary and computer file evidence that form the foundation of plaintiff's claims resides in Canberra, Australia; even plaintiff alleges that the final form of the allegedly pirated manuscript and the computer word lists are located in Australia. Other important documentary evidence outlining the development and funding of the CAD project by the Australian government is located in Australia as well.

Essential witnesses to the alleged pirating and the defenses to be proffered by the ANU defendants are citizens of Australia. In order to prove or disprove the claims, it would be necessary to call these witnesses, many of whom would not be subject to compulsory process in the United States. Moreover, plaintiff's sources of proof do not necessarily rest in the United States. Plaintiff is an international affiliation of scholars from around the world, and plaintiff admits that

witnesses to the transactions and events underpinning this lawsuit may come from Europe, the Pacific Island region, and other corners of the globe. Hence, the sources of proof are not concentrated in California, but reside primarily in Australia. The ANU defendants further pointed out at oral argument that none of the data used to compile the Austronesian treatises was channeled through California. Rather, scholars involved in the project submitted their research and data on the Austronesian languages directly to the ANU and the RSPS in Australia.

### (ii) Availability of Witnesses:

The availability and expense of transporting witnesses will, no doubt, be inconvenient for either plaintiff or defendants depending upon the eventual forum. While plaintiff could not compel Australian witnesses to testify in this forum, most of the named defendants would come voluntarily to testify. The same holds true for plaintiff's witnesses should the Court dismiss the case for *forum non conveniens* in favor of an Australian forum. However, the inconvenience for IDS is mitigated by the fact that it is an unincorporated association of international scholars and by plaintiff's admission that witnesses from around the world would be forced to travel great distances no matter where the litigation proceeds. In other words, the equities of requiring an international affiliation of scholars to sue a national university and its employees in their home nation fall in favor of defendants.

### (iii) Expeditious Trial:

Neither a United States or Australian forum is more preferable in attaining an expeditious trial on the merits, and the Court accordingly considers this a "neutral" factor.

### b. *Public Interest:*

■ The factors to be considered on the public interest side of the balancing are:

"court congestion, the local interest in resolving the controversy, and the preference for having a forum apply a law with which it is familiar." *Id.* at 771.

### (i) Court Congestion:

Neither party has supplied the Court with any evidence pertaining to congestion in the Australian courts. As a result, the Court considers court congestion a "neutral" factor in its balancing of the public and private interests.

### (ii) Local Interest:

Australia has an interest in the present dispute because the CAD treatise is connected closely to the Australian government and its people. The Australian government approved and funded the development of the CAD treatise in the amount of 800,000.00 Australian dollars. It and the Australian people thus have a significant interest both in the final Austronesian treatise developed using the expenditure of public funds, and the possibility that those funds may have been misused by the ANU defendants. Moreover, the Austronesian language family and the individuals who speak those languages are more closely related to the people of Australia and the surrounding Pacific region than the United States. Finally, the accused defendants are all citizens of Australia, one of which is a preeminent national university. As a consequence, the Court finds that Australia has a compelling local interest in the present controversy.[3]

The United States also has an interest in the protection of its certificate of registration for copyright. However, the unrefuted evidence submitted to the Court substantiates that a United States copyright would be given protection in Australia, since both parties are signatories to the Berne Convention. Moreover, the United States' and California's interest in this lawsuit is minimal because

---

3. In fact, plaintiff repeatedly asserted at oral argument that the Australian government and people had a significant interest in this lawsuit since it would demonstrate that significant public funding for the Austronesian linguistic project had been misappropriated or wasted. Although plaintiff offers this as an argument why the Court should decline to dismiss this action, the Court takes the opposite view. The allegations made by plaintiff strike at the heart of how public funds were used on a massive linguistic project and indicate that Australia's interest in the litigation may in fact be paramount.

plaintiff is a citizen neither of the United States nor of California; the only connection to the United States is the fact that the association of scholars is headquartered in Orange County, California.

### (iii) Choice of Law:

Assuming United States copyright law governs this case, the preference for having a court apply familiar law falls in favor of a United States forum; this Court is versed in the United States copyright laws and the other causes of action alleged by plaintiff. Nonetheless, the declaration evidence submitted by the ANU defendants substantiates that United States and Australian copyright laws are quite similar.

In addition, the ANU defendants argued persuasively at oral argument that Australian law may apply to the dispute between the parties since many of the allegedly infringing activities occurred in Australia. Defendants submit that the Berne Convention mandates this conclusion. The Court, however, finds it unnecessary to make a determinative choice of law decision. Both the United States and Australia are signatories to the Berne Convention, whose judicial systems are equipped to apply foreign laws if necessary. Moreover, the Court finds Australia's local interest in the dispute so compelling that, assuming United States law applies, it would override the preference for having a forum apply familiar law.

### D. The ANU Defendants' Motion to Strike:

The Court denies defendants' motion to strike the Declaration of Facts submitted by Mary Key, the declaration of Mary Key, and the declaration of Michael Tugwell in their entirety. The Court overrules defendants' specific objections to the evidence, except as follows: (1) the declaration of Ms. Key, ¶ 6; (2) the declaration of Mr. Tugwell, ¶¶ 16–17; and (3) "Evidence Analysis," ¶¶ 14, 16, 18–23.

### V.

### CONCLUSION

Because the ANU defendants are agencies or instrumentalities of the Australian government and no exception to the FSIA applies,

this Court lacks subject matter jurisdiction over this matter. Accordingly, plaintiff's complaint is dismissed with prejudice as to the ANU defendants.

If this Court had subject matter jurisdiction, the Court finds that dismissal based on *forum non conveniens* would be warranted. Australia is an adequate alternative forum; the private interests weigh heavily in favor of an Australian forum; and Australia's compelling local interest in the controversy outweighs the minimal interests the United States may have in the matter.

In light of the foregoing disposition of this matter, the Court finds it unnecessary to reach defendants' alternate contentions in support of dismissal for lack of personal or subject matter jurisdiction.

IT IS SO ORDERED.